# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )
      Black Apple iPhone  )
      Model: Unknown  )
Seized as FP&F: 2024255400021401 Item: 002  )

Case No. 24MJ8853

**FILED**
Sep 26 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY s/ VeronicaCota DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 09/25/2024

*Judge's signature*

City and state: El Centro, California     HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**     Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 002
Seized from Vanessa Dawn OLLMAN
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 16, 2024, up to and including September 16, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**  Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 002
Seized from Vanessa Dawn OLLMAN
**(Target Device #1)**

**A-2:**  Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 003
Seized from Cristo Manuel ZAMORA-Jimenez
**(Target Device #2)**

**A-3:**  Black Samsung Cellphone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 004
Seized from Ramiro ESQUIVEL-Sanchez
**(Target Device #3)**

**A-4:**  Green Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 005
Seized from Elvia Patricia GONZALEZ-Flores
**(Target Device #4)**

**A-5:**  Black Senwa Cellphone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 006
Seized from Ulises Antonio VELARDE-Pina
**(Target Device #5)**

as further described in Attachments A-1 to A-5, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Vanessa Dawn OLLMAN (OLLMAN) and Ulises Antonio VELARDE-Pina (VELARDE) for transportation of illegal aliens Andrea Areli PEREZ-Mendoza (PEREZ), Cristo Manuel ZAMORA-Jimenez (ZAMORA), Elvia Patricia GONZALEZ-Flores (GONZALEZ), and Ramiro ESQUIVEL-Sanchez (ESQUIVEL) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from OLLMAN, VELARDE and the Material Witnesses on or about September 15, 2024, incident to the arrest of OLLMAN, VELARDE, and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.  I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.  The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the

3

illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

4

  d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

  e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On this day, September 15, 2024, the Anti-Smuggling Unit (ASU) Border Patrol Agents (BPA) were conducting surveillance in the East Desert of the Calexico Border Patrol Station's Area of Responsibility (AOR), approximately 18 miles east of Calexico, California.

11. At approximately 1:23 p.m., BPA Espinal, who was working in the remote video surveillance system (RVSS) room observed five suspected illegal aliens (IAs) running north from the IBF approximately 3.5 miles east of the Imperial Irrigation District's Drop 4. BPA Espinal relayed this information to ASU BPAs via service radio. BPA Espinal maintained visual of the IAs as they continued north to the ACC, swam across the ACC and then continued north to Interstate 8 (I-8). Once IAs reached the south side of I-8, the IAs concealed themselves in some brush for approximately 20 minutes. BPA Carlton, who was driving an unmarked Border Patrol Service vehicle, pulled to the shoulder south of I-8 approximately one quarter mile west of the IAs' location and maintained visual of the area.

12. At approximately 2:45 p.m., BPA Carlton observed a blue Mazda sedan, later determined to be a Mazda 3, pass his location at a very slow rate of speed. When the Mazda reached the IAs' location, it pulled to the shoulder of the eastbound lanes and came to a stop. The five IAs ran to the Mazda and boarded the sedan. The Mazda then merged back on to I-8 and continued traveling east. BPA Espinal observed the IAs board the sedan via

the RVSS camera. BPA Carlton also observed the IAs board the sedan from his location. BPA Carlton merged on to I-8, caught up with the Mazda and ran record checks on the Mazda through El Centro Sector's Communications Center (KAK840). BPA Carlton continued following the Mazda for approximately seven miles relaying the direction of travel, location, speeds and traffic conditions via service radio. BPA Donahue, who was driving a fully marked Border Patrol Service vehicle merged in behind BPA Carlton and followed the Mazda at a distance.

13. At approximately 2:54 p.m., BPA Donahue pulled in directly behind the Mazda and activated his emergency lights and siren to signal for the Mazda to stop. The Mazda pulled to the shoulder of the eastbound lanes of I-8 and came to a stop just east of the Gordon's Well overpass. BPA Carlton contacted the driver, later identified as OLLMAN, and announced himself as U.S. Border Patrol. OLLMAN stated that she did not know the passengers and that she picked them up because they looked like they needed help. OLLMAN was determined to be a United States citizen. BPA Donahue contacted the five passengers and determined them to be citizens of Mexico and illegally present in the United States.

14. All subjects were arrested and transported to the Calexico Border Patrol Station for further processing. During post-Miranda statement OLLMAN stated she traveled today to pick up undocumented individuals and transport them to an unknown location. OLLMAN admitted that she was in communication with a smuggler via WhatsApp, and that the smuggler had sent her the pickup location. OLLMAN acknowledged she knew she was smuggling and was expecting to be paid between $500 for picking up and transporting the illegal aliens to an unknown location.

15. During a post Miranda statement, Material Witness VELARDE-Pina stated he is a citizen of Mexico. VELARDE stated he does not have documents to be in the United States legally. VELARDE stated he traveled to Mexicali two weeks ago with the intent to cross illegally into the United States. VALERDE stated that he was instructed via cellphone

6

to walk north to the canal, swim across the canal, walk till he reached a paved road with four driving lanes.

16. Material Witness GONZALEZ-Flores stated he is a citizen of Mexico. GONZALEZ-Flores stated he does not have documents to be in the United States legally. GONZALEZ-Flores stated she made smuggling arrangements and was going to pay $10,000 to be smuggled to Los Angeles, California. GONZALEZ-Flores stated when she boarded the load vehicle, she observed a female driver.

17. Material Witness PEREZ-Mendoza stated she is a citizen of Mexico. PEREZ-Mendoza stated she does not have documents to be in the United States legally. PEREZ-Mendoza stated her aunt made smuggling arrangements and was going to pay $10,000 to be smuggled to New York. PEREZ-Mendoza stated once the group made it to a paved road, she boarded a load vehicle through the front passenger seat and sat next to a female driver.

18. Material Witness Zamora-Jimenez stated he is a citizen of Mexico. Zamora-Jimenez stated he does not have documents to be in the United States legally. Zamora-Jimenez stated that he made smuggling arrangements and was going to pay $5,000 to be smuggled to Los Angeles, California. ZAMORA stated he crossed over the border fence, swam across a canal, and was instructed to run towards the highway and wait for a vehicle to arrive that would pick them up. ZAMORA stated the color of the load vehicle was a gray color.

19. Material Witness ESQUIVEL-Sanchez stated he is a citizen of Mexico. Esquivel-Sanchez stated he does not have documents to be in the United States legally. ESQUIVEL stated he made smuggling arrangements and was going to pay $8,500 to be smuggled to Phoenix, Arizona. ESQUIVEL stated he crossed over the border fence, swam across a canal, and was instructed to run towards the highway and wait for a vehicle to arrive that would pick them up.

20. During a search incident to arrest of OLLMAN, VELARDE and the Material Witnesses, five cellphones were found: a black Apple iPhone (Target Device #1) was found

on OLLMAN's lap by BPA Carlton and OLLMAN claimed ownership of this cellphone. A black Apple iPhone (Target Device #2) was found on ZAMORA's person and ZAMORA claimed ownership of this cellphone. A black Samsung cellphone (Target Device #3) was found by BPA Donahue in ESQUIVEL's pants pocket and ESQUIVEL claimed ownership of this cellphone. A green Motorola cellphone (Target Device #4) was found on GONZALEZ's person and GONZALEZ claimed ownership of this cellphone. A black Senwa cellphone (Target Device #5) was found on VELARDE's person and VELARDE claimed ownership of this cellphone. All cellphones were seized as evidence.

21. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on August 16, 2024, up to and including September 16, 2024, the day after the arrest of OLLMAN, VELARDE, and the Material Witnesses.

## METHODOLOGY

22. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or

8

hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//

9

# CONCLUSION

25. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that OLLMAN, VELARDE, and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by OLLMAN, VELARDE, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 25th day of September, 2024.

_____  5:30 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>A-1:</u>           Black Apple iPhone
              Model: Unknown
              Seized as FP& F: 2024255400021401 Item: 002
              Seized from Vanessa Dawn OLLMAN
              **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>A-2:</u>    Black Apple iPhone
          Model: Unknown
          Seized as FP& F: 2024255400021401 Item: 003
          Seized from Cristo Manuel ZAMORA-Jimenez
          **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**    Black Samsung Cellphone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 004
Seized from Ramiro ESQUIVEL-Sanchez
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:** Green Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 005
Seized from Elvia Patricia GONZALEZ-Flores
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**      Black Senwa Cellphone
Model: Unknown
Seized as FP& F: 2024255400021401 Item: 006
Seized from Ulises Antonio VELARDE-Pina
**(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 16, 2024, up to and including September 16, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.